IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TED ERUM, JR., | ) | CIVIL NO. 08-00113 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING AMENDED |
| | ) | COMPLAINT |
| vs. | ) | |
| | ) | |
| COUNTY OF KAUAI, KOLOA | ) | |
| MARKETPLACE, LLC, EARTHWORKS | ) | |
| PACIFIC, INC., AND DOES 1-20, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DISMISSING AMENDED COMPLAINT

I.      INTRODUCTION.

On March 5, 2008, Plaintiff Ted Erum, Jr., a retired
attorney who is proceeding pro se, filed a Complaint in this
case, as well as an emergency motion for temporary restraining
order and a motion for preliminary injunction.  Because the
Complaint failed to state a claim over which this court had
jurisdiction, the court dismissed the Complaint on March 6, 2008.
Erum was given leave to amend his Complaint to state claims over
which this court has subject matter jurisdiction.

On March 13, 2008, Erum filed an Amended Complaint, as
well as an ex parte motion for temporary restraining order.  The
court subsequently ordered Erum to provide Defendants County of
Kauai ("County"), Koloa Marketplace, LLC ("Koloa Marketplace"),
and Earthworks Pacific, Inc. ("Earthworks"), with copies of the
Amended Complaint and motion for temporary restraining order and

set a briefing schedule.  Erum's motion for temporary restraining order was heard on March 20, 2008.  That motion seeks to prevent Defendants from cutting, removing, and/or destroying monkeypod trees on land in the town of Koloa located on the island of Kauai, as well as from grading, grubbing, excavating, and/or removing soil in a floodway area on that land.

The history of this case, including statements made by Erum at the hearing on this motion, demonstrate that Erum, in asserting "federal" claims in his Amended Complaint, is merely attempting to manufacture federal question jurisdiction.  Erum does not allege colorable federal question claims.  Instead, his claims, while citing federal statutes, are immaterial, insubstantial, and frivolous, and made solely for the purpose of manufacturing federal question jurisdiction under 28 U.S.C. § 1331.  This court therefore lacks subject matter jurisdiction over the claims asserted in the Amended Complaint.  Accordingly, the Amended Complaint is dismissed.

II.      BACKGROUND.

The monkeypod trees in issue are on private property in Koloa, Kauai, Hawaii.  On September 27, 2007, Koloa and the County settled a federal court suit relating to Koloa's attempts to develop the Kauai property.  Chief Judge Helen Gillmor presided in that case and entered a court order as part of the settlement.  Pursuant to the settlement and Chief Judge Gillmor's

2

order, Koloa was allowed "to relocate, replace and/or remove
existing monkeypod or other trees consistent with its landscaping
plan," so long as certain conditions were met.  See Order, Civ.
No. 06-00570 HG/BMK (Sept. 27, 2007).  Koloa was also allowed to
take certain actions in the floodway adjacent to the land, so
long as it complied with development and construction standards
for construction within a floodway and submitted a drainage study
and a "No Rise" determination by a civil engineer.  Id.

Erum, who was not a party to the federal court suit,
sought to prevent Koloa from cutting down the monkeypod trees.
Several months after the federal court case was settled, Erum,
pursuant to section 22-5.3(f) of the Kauai Ordinances, petitioned
the County Arborist Advisory Committee to have the monkeypod
trees declared "exceptional."  See Petition for Examination of
Trees (Jan. 22, 2008).  Such a designation would have made it
unlawful to remove or otherwise destroy the trees.  See Kauai
Ordinances § 22-5.7(a).  On February 12, 2008, Koloa's attorney
wrote the County Arborist Advisory Committee that the County had
already agreed in its settlement with Koloa to allow Koloa to
"relocate, replace and/or remove" the monkeypod trees.  See
Letter from Gary G. Grimmer to Arborist Committee (Feb. 12,
2008).

Erum says that, on February 13, 2008, the Arborist
Committee "orally and summarily denied" his petition.  See

3

Verified Amended Complaint (March 13, 2008) ¶ 23.  Erum complains
that the Arborist Committee did not examine the merits of whether
any particular tree was entitled to an "exceptional" designation.
There is no dispute that, on February 13, 2008, the Arborist
Committee held a hearing on Erum's petition.  At that hearing,
the Arborist Committee received public comment from six people
about the petition, including Erum and Koloa's attorney.  It then
went into executive session.  After returning from executive
session, Kauai County Deputy Planning Director Imai Aiu moved to
deny Erum's petition on the ground that Chief Judge Gillmor's
order removed the Arborist Committee's authority to declare the
monkeypod trees "exceptional."  The motion passed unanimously.
See Declaration of Gary G. Grimmer (March 19, 2008) ("Grimmer
Decl.").  Erum is unsatisfied with the Arborist Committee's
decision, arguing here that it should have decided the merits of
his petition based on whether the trees were "exceptional," not
based on the existence of a court order that allowed Koloa to
"relocate, replace, and/or remove" the monkeypod trees.

        The same day that the Arborist Committee denied his
petition, Erum filed suit in state court against the owner of the
property on which the trees are located, the Eric A. Knudson
Trust, as well as its trustee, Stacey Wong.  See Complaint for
Injunctive Relief, Civ. No. 08-1-0032.  There is no dispute that
the state court denied Erum's motion for temporary restraining

4

order and motion for preliminary injunction seeking to enjoin the cutting of the monkeypod trees.

Also on February 13, 2008, Erum filed a "Petition for Designation of Exceptional Trees" with the Kauai County Council. See Petition for Designation of Exceptional Trees (Feb. 13, 2008). That petition joined the Koloa Community Association's similar request dated February 7, 2008. In the hearing before this court, Erum indicated that he filed the petition with the Kauai County Council based on his individual right to petition the government, not based on any ordinance, law, or regulation providing that right. The Kauai County Council has not yet ruled on his petition.

III.    ANALYSIS.

        A.    Erum Lacks Standing to Challenge Chief Judge
              Gillmor's Order.

The Fifth Claim for Relief in the Amended Complaint alleges, in part, that the settlement reached in Chief Judge Gillmor's suit is invalid. Chief Judge Gillmor approved the settlement between Koloa and the County and filed the settlement as her order on September 27, 2007. See Order, Civ. No. 06-00579 HG/BMK (Sept. 27, 2007). Erum lacks standing to challenge the validity of that federal court order in this action because he was not a party to that settlement order. See SmithKline Beecham Corp. v. Pentech Pharms., Inc., 261 F. Supp. 2d 1002, 1006-07 (N.D. Ill. 2003) ("A nonparty to a settlement agreement no more

5

has standing to challenge the legality of the agreement than a nonparty to any other contract would have, unless he is hurt by the agreement." (citations omitted)); see also Hilao v. Estate of Marcos, 393 F.3d 987, 994 (9th Cir. 2004) (ruling that a nonparty who was not harmed by an order did not have standing to bring an appellate challenge to the order); Am. Jur. Compromise § 32 ("A compromise or settlement agreement is a contract, and its construction and enforceability is governed by the legal principles applicable to contracts generally.").

Even if Erum claims to be hurt by the settlement, any challenge to its validity should be by way of a motion to intervene in Chief Judge Gillmor's suit. See In re Pantopaque Products Liability Litig., 938 F. Supp. 266, 276 (D.N.J. 1996) ("Additionally, as to Meyers request for modification of the protective order that was entered by the state court . . . , Meyers has presented his request in the wrong forum. Modification by one court of the orders of another offends basic notions of comity. Federal courts thus recognize that the proper procedure for a nonparty who seeks the modification of a protective order is to petition for intervention for that limited purpose in the matter in which the order was entered."). That is, Erum should not be proceeding in a brand new action before a different judge. This court, of course, is not saying that Erum should seek to intervene in Chief Judge Gillmor's suit. The

record before this court does not establish that such
intervention is warranted, and this court mentions intervention
only by way of establishing the impropriety of Erum's present
claim.

      B.   This Court Lacks Federal Question Jurisdiction.

      This court turns now to Erum's other claims.  As the
court noted earlier, before it may rule on Erum's temporary
restraining order motion, the court must assure itself that this
case falls within its jurisdiction.  Erum's original Complaint
was dismissed because, although premised on diversity
jurisdiction, it lacked complete diversity.  Erum has amended
that Complaint.  The thrust of his Amended Complaint is identical
to that of the original Complaint, but Erum has added claims that
he says give this court federal question jurisdiction under 28
U.S.C. § 1331.  Erum alleges that this court has supplemental
jurisdiction over the remaining state court claims under 28
U.S.C. § 1367.

      Erum alleges a 42 U.S.C. § 1983 claim based on an
alleged deprivation of First Amendment and due process rights.
He also alleges direct violations of the First Amendment and the
Fourteenth Amendment's due process clause.  Finally, his Amended
Complaint asserts that he has suffered a violation of 42 U.S.C.
§ 1985(3).  At the hearing, however, Erum said that he actually

has no claim under § 1985(3) and that that claim should have alleged another § 1983 violation.

Although Erum cites federal statutory provisions, those references do not automatically confer subject matter jurisdiction on this court via 28 U.S.C. § 1331.  The United States Supreme Court has recognized that a "plaintiff properly invokes § 1331 jurisdiction" by pleading "a colorable claim 'arising' under the Constitution or laws of the United States." Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006).  The Court explained that "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" Id. n.10 (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)); accord Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)); Bell v. Hood, 327 U.S. 678, 682-83 (1946) ("a suit may sometimes be dismissed for want of jurisdiction where the alleged

8

claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."); Franklin v. Oregon, State Welfare Div., 662 F.2d 1337, 1342 (9th Cir. 1981) (same).

This court recognizes that it must be careful to distinguish between a Rule 12(b)(6) dismissal of a case based on a plaintiff's failure to state a claim and a Rule 12(b)(1) dismissal based on a determination that the asserted federal claims are immaterial, insubstantial, or frivolous and asserted solely to obtain jurisdiction.  The court is particularly concerned here because it has no actual motion to dismiss before it and is instead forced to examine jurisdiction in connection with Erum's request for a temporary restraining order. Nevertheless, the court is not acting sua sponte.  This court clearly had the benefit of the adversary process, having given the parties an opportunity to present their positions before the court makes any decision.

The court here considers the history of this case, the contents of the filings in this case, and Erum's statements made at the hearing on this matter.  Erum's original Complaint was dismissed for lack of subject matter jurisdiction.  Erum now proceeds with § 1983 claims that are not colorable.  Not only has Erum so far been unsuccessful in related state court proceedings,

his statements at the hearing before this court demonstrate his desire to enter this forum by any means possible.  At the hearing before this court he suggested dropping a party to create diversity jurisdiction or asserting an equal protection claim even though he conceded that he was not treated differently because he was a member of some protected class.  The court can only conclude that Erum seeks to manufacture subject matter jurisdiction in this action.  The purported "federal" claims asserted in the Amended Complaint are immaterial, insubstantial, and frivolous, and made solely for the purpose of obtaining federal question jurisdiction.  Those claims do not give rise to subject matter jurisdiction.

> 1.    § 1983 Claims.

Erum's Amended Complaint alleges separate causes of action for "direct violations" of his First and Fourteenth Amendment rights (First Claim), as well as a violation of 42 U.S.C. § 1983 based on the same alleged violations of his First and Fourteenth Amendment rights (Second Claim).  Because § 1983 is the vehicle by which a private citizen may seek recovery for violations of federal laws and the United States Constitution, the court construes Erum's First and Second claims as asserting a single claim under § 1983 for alleged violations of his First and Fourteenth Amendment rights.  See Buntin v. City of New York, 395 F. Supp. 2d 104, 107-08 (S.D.N.Y. 2005) (construing a claim for a

violation of § 1983 and one for violation of rights under the Fifth and Fourteenth Amendments to the United States Constitution as a single claim under § 1983), <u>aff'd</u> 225 Fed. Appx. 28 (2d Cir. 2007); <u>see also</u> <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 816 (1985) (noting that § 1983 does not create any substantive rights, but instead "provides remedies for deprivations of rights established elsewhere").

a.   <u>First Amendment Claim.</u>

Erum alleges that he was deprived of his First Amendment right to petition the County to address his grievances when the Arborist Committee summarily denied his petition, allegedly without considering its merits.  Amended Complaint at 9.  At the hearing on this matter, Erum said that, in the past, the Arborist Committee has decided petitions to declare trees to be "exceptional" on the merits of whether the trees deserved an "exceptional" designation.  Even assuming this is so (although there is no evidence of this in the record), the court concludes that Erum does not state a colorable First Amendment claim.

The First Amendment guarantees the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Individuals who attend and speak out at zoning board hearings, as well as those who challenge the board's decisions, are exercising their First Amendment right to petition the government.  <u>White v. Lee</u>, 227 F.3d 1214, 1227 (9th Cir. 2000);

11

see also Christian Gosepel Church, Inc. v. City & County of San
Francisco, 896 F.2d 1221, 1226 (9th Cir. 1990) ("circulating a
petition, testifying before the Planning Commission and writing
letters to the editor" to protest zoning decisions are protected
activities under the First Amendment).

         The First Amendment is violated when a government acts
to chill individuals' exercise of their First Amendment rights.
See Bantam Books. Inc., v. Sullivan, 372 U.S. 58, 70-72; see also
White, 227 F.2d at 1228-29 (concluding that the plaintiffs' First
Amendment rights were violated when government officials engaged
in conduct that "would have chilled or silenced a person of
ordinary firmness from engaging in future First Amendment
activities").

         But the First Amendment's bar on governmental conduct
that would chill an individual does not mean that the government
has an affirmative obligation to listen or respond.  See e.g.,
Minn. State Bd. for Comm. Colls. v. Knight, 465 U.S. 271, 285
(1984) ("Nothing in the First Amendment or in this Court's case
law interpreting it suggests that the rights to speak, associate,
and petition require government policymakers to listen or respond
to individuals' communications on public issues."); Smith v.
Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 465
(1979) ("But the First Amendment does not impose any affirmative
obligation on the government to listen, to respond or, in this

context, to recognize the association and bargain with it."); cf.
DeShaney v. Winnebago Country Dept. of Soc. Servs., 489 U.S. 189,
195-96 (noting that the Fourteenth Amendment generally confers no
affirmative obligations on the Government).  Individuals' First
Amendment right to petition their government is not mirrored in a
governmental obligation to respond to the exercise of that right.

          In evaluating Erum's First Amendment claim, this court
is only concerned with whether Erum exercised his right to
petition the County and whether any County official or entity
took any action that might have chilled Erum's speech--not with
whether the County, in the form of the Arborist Committee or in
any other form, appropriately responded.  This court is not
persuaded by Erum's argument that, because an ordinance provides
for the Arborist Committee to recommend a tree as "exceptional"
or because the Arborist Committee allegedly decided other
petitions on their merits, the County has expanded his First
Amendment rights.  Any right created by the County is merely a
County right that, even if it goes beyond the First Amendment,
does not expand the First Amendment itself.

          It is undisputed that Erum filed two petitions to
address his grievance and that Erum was able to speak about the
merits of his grievance at a February 13, 2008, hearing.  Erum
was thus not precluded from exercising his First Amendment right
to petition the government.  Further, the action that he

complains of--the Arborist Committee's alleged summary
disposition of his claim--occurred after Erum exercised his First
Amendment right, thereby foreclosing the argument that the
Arborist Committee somehow "chilled" Erum's speech.  Even if
Erum's petition was disposed of without consideration of its
merits, that was not a First Amendment violation, as the First
Amendment imposes no governmental duty to respond, or even
listen, to Erum's petition.

        The court keeps in mind Erum's citation of the First
Amendment only after his original Complaint was dismissed for
lack of jurisdiction, as well as Erum's statements at this
court's hearing indicating that he was willing to manufacture
federal jurisdiction by dropping a nondiverse party or by adding
an equal protection claim when no such valid claim exists.  This
background, added to Erum's lack of success in the state court
action, demonstrates that Erum's clearly colorless First
Amendment claim was asserted solely in the hope of investing this
court with subject matter jurisdiction over a state-law matter.

                b.    Fourteenth Amendment Claim.

        Erum also alleges a due process violation, separate
from his First Amendment claim.  See Amended Complaint at 9.
Because Erum's First Amendment claim is not colorable, Erum
cannot rely on the First Amendment in claiming the deprivation of

any First Amendment property or liberty interest in violation of the Fourteenth Amendment.

Before the court can decide whether Erum's due process rights have been violated, the court must make the threshold determination of whether Erum had any interest in property or liberty sufficient to trigger the due process protections of the Fourteenth Amendment.  See Board of Regents of State Coll. v. Roth, 408 U.S. 564, 569 (1972).  Because Erum's Amended Complaint is not clear, the court asked Erum at the hearing to identify the protected interest he was deprived of.  Although the court had thought that Erum would be claiming a violation of a protected property interest, Erum instead said that he was not asserting a violation of any property interest, but was instead asserting solely a violation of a liberty interest.  Erum did not clearly articulate what liberty interest was involved here.

The Ninth Circuit has stated that "[a]n individual's liberty encompasses the ability to pursue interests of choice, to move from place to place unhindered by the government, and to choose freely any lawful way of living."  Kelch v. Director, Nevada Dept. of Prisons, 10 F.3d 684, 688 (9th Cir. 1993).  Other courts have recognized that a person may have a liberty interest in his or her First Amendment right to petition the government for redress or a grievance.  See, e.g., Trentadue v. Integrity Committee, 501 F.3d 1215, 1236-37 (10th Cir. 2007); Grundstein v.

15

Ohio, 2006 WL 3499990 (N.D. Ohio Dec. 5, 2006).  Even assuming

that Erum had a liberty interest in petitioning the County to

have the monkeypod trees at issue declared "exceptional," Erum

does not even claim that he was deprived of that liberty

interest.  As described above, Erum actually petitioned the

County.  Erum simply fails to identify a colorable liberty

interest at stake here.

Even if Erum were asserting a property interest

violation, Erum would not be able to assert a colorable

Fourteenth Amendment due process claim based on a property

interest.  Property interests "are created and their dimensions

are defined by existing rules or understanding that stem from an

independent source such as state law-rules or understanding that

secure certain benefits and that support claims of entitlement to

those benefits."  Id. at 577; see also Orloff v. Cleveland, 708

F.2d 372, 377 (9th Cir. 1983) ("Entitlements are created by 'rules

or understandings' from independent sources, such as statutes,

regulations, and ordinances, or express of implied contracts.").

Property interests are "determined largely by the language of the

statute and the extent to which the entitlement is couched in

mandatory terms."  Assoc. of Orange County Deputy Sheriffs v.

Gates, 716 F.2d 733, 734 (9th Cir. 1983).  Thus, in Cassidy v.

State of Hawaii, Dep't of Transp., Harbors Div., 915 F.2d 528 (9th

Cir. 1990), the Ninth Circuit concluded that a mooring permit

issued under section 19-62-5 of the Hawaii Administrative Rules[1] was not a property right protected by the Fourteenth Amendment because the Harbors Division reserved the discretion to renew the permit.  Id. at 531; see also Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465 (1981).

Erum does not establish any property interest in the monkeypod trees.  The relevant county code, similar to the one at issue in Cassidy, provides that "[a]ny citizen or citizen group may petition the Committee to examine a particular tree or group of trees for the purpose of having it recommended as an exceptional tree."  Kauai County Code § 22-5.1 (emphases added). The absence of mandatory language demonstrates that Erum has no property interest in having the monkeypod trees deemed exceptional.  In fact, whether the Arborist Committee even considers recommending the tree as exceptional is within its discretion.  At most, Erum may have an interest in petitioning the Arborist Committee, but he is not claiming that he was prevented from submitting his petition.

Even assuming Erum has a protected interest sufficient to trigger procedural due process rights, any claim by Erum that he was denied due process is totally frivolous.  Due process

---

[1] Section 19-62-5(a) of the Hawaii Administrative Rules provides that the department "may" approve an application for permit renewal after a fourteen-day absence.  See Haw. Admin. R. § 19-62-5 (emphasis added).

requires notice and an opportunity to be heard.  See e.g., Roth, 408 U.S. at 570 n.7.  "Due process is a flexible concept and its procedural requirements vary depending upon the particular deprivation."  Orloff, 708 F.2d at 378.  In Matthews v. Eldrige, 424 U.S. 319, 335 (1976), the Supreme Court set forth a three-factor balancing test to determine the procedures that are required to satisfy due process: (1) the private interest at stake; (2) the risk of "erroneous deprivation" through the procedures employed; and (3) the "fiscal and administrative burdens" that additional procedural safegaurds would entail. Erum admits that he submitted a petition to the Arborist Committee.  The Arborist Committee knew it had the petition before it, and Erum was allowed to make statements at a February 13, 2008, Arborist Committee meeting.  Erum exercised the very right he had to petition the Arborist Committee.

        Erum does not state a colorable Fourteenth Amendment claim.  Viewed in light of the history of this matter, Erum's lack of success in the related state-court matter, and Erum's willingness to amend his Amended Complaint to manufacture jurisdiction, this court concludes that the assertion of a Fourteenth Amendment violation is an improper attempt to obtain federal subject matter jurisdiction over a state-law matter. Such an attempt does not give rise to federal jurisdiction.

18

      2.   § 1985(3) Claims, which Erum Recasts as
          § 1983 Claims.

In the Third Claim for Relief of the Amended Complaint, Erum alleges that Defendants violated 42 U.S.C. § 1985(3). Recognizing that § 1985(3) is inapplicable, Erum stated at the hearing before this court that he had meant to allege further violations of § 1983. Erum argued that Koloa acted in concert with County officials and therefore can be said to have acted under color of law. Even assuming that this is true, Erum fails to identify any federal constitutional or statutory right that he was deprived of in violation of § 1983. Accordingly, for the reasons set forth above, the latest § 1983 claim does not state a colorable claim that would give rise to federal subject matter jurisdiction.

      C.   This Court Declines to Exercise Supplemental
          Jurisdiction Over the Remaining Claims.

Supplemental jurisdiction over state claims exists when a federal claim is sufficiently substantial to confer federal jurisdiction, and there is "a common nucleus of operative fact between the state and federal claims." Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (citing Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991)); see also 28 U.S.C. § 1367. This court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates

19

over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367.

Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966).  When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  Gibbs, 383 U.S. at 726.  Although the Supreme Court later noted that such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," it also recognized that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)

Because all of Erum's purported "federal" claims are being dismissed, the court declines to exercise supplemental jurisdiction over his remaining state-law claims.

IV.        CONCLUSION.

Erum's action is dismissed.  Given this dismissal, the
court does not address the merits of the temporary restraining
order motion.  The court denies Erum's oral request at the
hearing on this matter for leave to further amend his Amended
Complaint, as Erum, who is a retired attorney, has already had an
opportunity to amend his Complaint and appears to be attempting
to manufacture federal subject matter jurisdiction over state-law
matters.  The Clerk of Court is directed to terminate the motion
for temporary restraining order, as well as any other pending
motion, to enter judgment in favor of Defendants, and to close
this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 20, 2008.



  /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Erum v. County of Kauai, et al.; Civil No. 08-00113 SOM/BMK; ORDER DISMISSING
AMENDED COMPLAINT