IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TED ERUM, JR., | ) | CIVIL NO. 08-00113 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER SANCTIONING PLAINTIFF |
| | ) | TED ERUM, JR., $6,000 FOR HIS |
| vs. | ) | BAD FAITH FILING OF THE |
| | ) | AMENDED COMPLAINT |
| COUNTY OF KAUAI, KOLOA | ) | |
| MARKETPLACE, LLC, EARTHWORKS | ) | |
| PACIFIC, INC., AND DOES 1-20, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER SANCTIONING PLAINTIFF TED ERUM, JR., $6,000 FOR
HIS BAD FAITH FILING OF THE AMENDED COMPLAINT

I.      INTRODUCTION.

On March 5, 2008, Plaintiff Ted Erum, Jr., a.k.a.

Theodorico Erum, Jr., a retired attorney proceeding pro se, filed

a Complaint in this case, as well as an emergency motion for

temporary restraining order and a motion for preliminary

injunction.  Because the Complaint failed to state a claim over

which this court had jurisdiction, the court dismissed the

Complaint on March 6, 2008.  Erum was given leave to amend his

Complaint to state claims over which this court had subject

matter jurisdiction.

On March 13, 2008, Erum filed an Amended Complaint, as

well as an ex parte motion for temporary restraining order.

Because the history of the case, including statements made by

Erum at the hearing on his motion for temporary restraining

order, demonstrated that Erum, in asserting "federal" claims in

his Amended Complaint, was merely attempting to manufacture federal question jurisdiction, the court dismissed the Amended Complaint.  The court ruled that Erum did not allege colorable federal question claims and that, while citing federal statutes, his federal claims were immaterial, insubstantial, and frivolous, and made solely for the purpose of manufacturing federal question jurisdiction under 28 U.S.C. § 1331.  The court therefore ruled that it lacked subject matter jurisdiction over the claims asserted in the Amended Complaint.

On April 3, 2008, Defendants filed a motion for an award of attorneys' fees.  On April 11, 2008, Magistrate Judge Barry M. Kurren construed that motion as a motion for sanctions, informing the parties that the court would decide the motion without a hearing and telling Erum that, if he had any opposition, he could file written opposition to the motion for sanctions no later than April 30, 2008.  The court allowed Defendants to file a reply no later than May 12, 2008.  See Minute Order (Apr. 11, 2008).

On April 30, 2008, Erum timely filed his opposition to the motion for sanctions.  On May 1, 2008, Erum filed an amended opposition to the motion for sanctions.  On May 12, 2008, Defendants timely filed their reply in support of their motion for sanctions.

On May 14, 2008, Magistrate Judge Kurren issued an order granting in part and denying in part Defendants' motion for sanctions.  Magistrate Judge Kurren determined that Erum had filed the Amended Complaint in bad faith.  Although Defendants had asked the court to sanction Erum more than $18,000 to compensate them for all of the attorneys' fees they had incurred in this matter, Magistrate Judge Kurren exercised his inherent power to sanction Erum $13,231.97, payable to Defendants.

On June 2, 2008, Erum filed objections to Magistrate Judge Kurren's May 14, 2008, order.  On June 16, 2008, Defendants filed a response to the objections.

This court has reviewed all of the filings in this matter.  Although Magistrate Judge Kurren issued an order sanctioning Erum $13,231.97, the court treats that order as actually embodying findings and a recommendation that this court sanction Erum, which the court adopts in part and modifies in part.  The court agrees that, in filing the Amended Complaint, Erum proceeded in bad faith and that Erum should be sanctioned pursuant to the court's inherent power.  Because of the unique circumstances of this case, however, the court determines that $13,231.97 is too large a sanction.  The court therefore modifies Magistrate Judge Kurren's report and sanctions Erum $6,000 to offset some of the attorneys' fees that Defendants incurred as a result of Erum's bad faith conduct.

II.        <u>BACKGROUND.</u>

To the extent the Amended Complaint sought to invalidate a settlement reached in another federal district court case approved by the court, the court held that Erum lacked standing to challenge the validity of that federal court order in this action because he was not a party to that settlement order. <u>See</u> Order Dismissing Amended Complaint (March 20, 2008).

This court then examined Erum's other claims.  Erum's original Complaint had been dismissed because, although premised on diversity jurisdiction, it lacked complete diversity.  Erum amended that Complaint, but the thrust of his Amended Complaint was identical to that of the original Complaint.  Erum merely added claims that he said gave this court federal question jurisdiction under 28 U.S.C. § 1331.  Erum then alleged that this court has supplemental jurisdiction over the remaining state court claims under 28 U.S.C. § 1367.  Erum asserted a 42 U.S.C. § 1983 claim based on an alleged deprivation of First Amendment and due process rights.  He also alleged direct violations of the First Amendment and the Fourteenth Amendment's due process clause.  Finally, his Amended Complaint asserted that he had suffered a violation of 42 U.S.C. § 1985(3).  At the hearing, however, Erum said that he actually had no claim under § 1985(3) and that he should have instead alleged another § 1983 violation.

4

Although Erum cited federal statutory provisions, this court ruled that those references did not automatically confer subject matter jurisdiction on this court via 28 U.S.C. § 1331. The court considered the history of the case, the contents of the filings in this case, and Erum's statements made at the hearing on his motion for temporary restraining order.  Not only was Erum unsuccessful in related state court proceedings, his statements at the hearing before this court demonstrated his desire to enter this forum by any means possible.  At the hearing he suggested dropping a party to create diversity jurisdiction or asserting an equal protection claim even though he conceded that he was not treated differently because he was a member of some protected class.  The court therefore concluded that Erum sought to manufacture subject matter jurisdiction in this action because the purported "federal" claims asserted in the Amended Complaint were immaterial, insubstantial, and frivolous, and made solely for the purpose of obtaining federal question jurisdiction.  This court agrees with Magistrate Judge Kurren that Erum's actions amounted to bad faith conduct, especially because Erum is a retired attorney who should have known better than to assert frivolous arguments merely to create federal question jurisdiction.

III.       <u>STANDARD OF REVIEW.</u>

The standard of review in this matter turns on whether the Magistrate Judge correctly determined that he could issue a post-judgment order sanctioning Erum or whether he should have issued findings and a recommendation that Erum be sanctioned.

It is undisputed that "[t]he power of federal magistrate judges is limited by 28 U.S.C. § 636." <u>Estate of Conners by Meredith v. O'Connor</u>, 6 F.3d 656 (9th Cir. 1993).  This court may designate a magistrate judge to hear and determine nondispositive pretrial motions.  28 U.S.C. § 636(b)(1)(A); <u>see also</u> <u>O'Connor</u>, 6 F.3d at 658 ("Under 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear any nondispositive pretrial matter pending before the court.)".  This court may also designate a magistrate judge to conduct hearings and to submit proposed findings of fact and recommendations for disposition by the district judge "of <u>any</u> motion excepted in [23 U.S.C. § 636(b)(1)(A).]"  28 U.S.C. § 636(b)(1)(B) (emphasis added).  With the consent of the parties, this court may designate a magistrate judge to act "as a special master in any civil case."  28 U.S.C. § 636(b)(2).  In addition, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."   28 U.S.C. § 636(b)(3).

In O'Connor, the Ninth Circuit examined a post-verdict motion for attorneys' fees brought pursuant to 42 U.S.C. § 1988. The district court referred the motion to a magistrate judge without specifying the subsection of § 636 that formed the basis of the referral. See O'Connor, 6 F.3d at 657. The magistrate then issued an order awarding fees to the plaintiff. The Ninth Circuit examined whether the magistrate judge properly issued an order regarding fees. Initially, the Ninth Circuit noted that, because the parties had not consented to the magistrate judge's determination of the motion, § 636(b)(2) was inapplicable. Id. at 658. It then determined that § 636(b)(1)(A) was inapplicable because the post-verdict motion was not a nondispositive pretrial matter. Id.

Because the plaintiffs in O'Connor had sought attorneys' fees in their complaint under § 1988, the Ninth Circuit viewed their motion for attorneys' fees as dispositive of a claim or defense such that it should have been determined pursuant to § 636(b)(1)(B). This meant that the magistrate judge should have submitted proposed findings and recommendations for the district court's de novo review. O'Connor, 6 F.3d at 658. O'Connor held, however, that because the district court conducted a de novo review and entered its own award of attorneys' fees and costs, any error by the magistrate judge in simply issuing an

7

order, rather than findings and recommendations, was harmless. O'Connor, 6 F.3d at 659 and 659 n.2.

In the present case, the motion for sanctions was neither a nondispositive pretrial matter, nor dispositive of a claim or defense raised in a pleading.  Accordingly, neither § 636(b)(1)(A) nor (B) is applicable.  Because the parties did not consent to the magistrate judge deciding the matter pursuant to § 636(b)(2), the magistrate judge was authorized to decide the matter only under § 636(b)(3).  See King v. Ionization Int'l, Inc., 825 F.2d 1180, 1185 (7th Cir. 1987) ("No provision expressly authorizes the judge to assign a magistrate to post-judgment proceedings, although we can think of no good reason not to allow such assignments and the statute does have a catch-all section: 'A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.' 28 U.S.C. § 636(b)(3).").

It is not entirely clear what level of scrutiny this court should apply when reviewing a matter referred to a magistrate judge pursuant to § 636(b)(3).  Some Ninth Circuit authority holds that, pursuant to § 636(b)(3), a magistrate judge is not required to submit proposed findings and recommendations. See, e.g., Minetti v. Port of Seattle  152 F.3d 1113, 1114 (9th Cir. 1998) ("the magistrate judge's authority to make rulings or recommendations on dispositive pretrial matters not specified in

8

28 U.S.C. § 636(b)(1)(A) is derived from 28 U.S.C. § 636(b)(3),
which does not require the magistrate judge to submit proposed
findings and recommendations"). On the other hand, some Ninth
Circuit authority indicates that a district judge should conduct
de novo review over any part of a magistrate judge's findings to
which a party objects. See, e.g., Coolidge v. Schooner Cal., 637
F.2d 1321, 1324 (9th Cir. 1981). In an abundance of caution, this
court deems Magistrate Judge Kurren's order sanctioning Erum to
be findings and a recommendation and reviews de novo all matters
to which Erum objects.

IV.      ANALYSIS.

         After conducting a de novo review of the order
sanctioning Erum, the court adopts it in part and modifies it in
part. The court sanctions Erum $6,000 pursuant to its inherent
power to sanction him for his bad faith conduct of filing a
frivolous Amended Complaint that improperly attempted to
manufacture federal question jurisdiction. This sanction shall
be paid to Defendants to partially offset the attorneys' fees
they directly incurred in responding to Erum's bad faith conduct.

         The Supreme Court has noted that "it is firmly
established that the power to punish for contempts is inherent in
all courts." Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991).
"Because of their very potency, inherent powers must be exercised
with restraint and discretion." Id. The Ninth Circuit has

9

therefore stated that this court "has the inherent power to impose sanctions for bad faith, which includes a broad range of willful improper conduct." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001). The Ninth Circuit requires a specific finding of bad faith before a court may issue sanctions pursuant to its inherent powers. Id. This means that a court must specifically find bad faith or conduct tantamount to bad faith. Id. at 994. The court may issue sanctions for bad faith based on "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id.

The court here finds that Erum's filing of the Amended Complaint demonstrates bad faith conduct. As discussed in the order dismissing the Amended Complaint, Erum's attempts to stop various trees from being cut down in state court and at the administrative level were unsuccessful. Erum filed a complaint in this court based on diversity jurisdiction. When this court dismissed that Complaint, ruling that the parties were not diverse, Erum attempted to manufacture jurisdiction by alleging various federal causes of action. None of these federal causes of action was colorable, and Erum indicated at the hearing that he was willing to do whatever it took to create jurisdiction in this court. This court concluded that his federal claims were frivolous and that they were asserted solely to manufacture

subject matter jurisdiction.  Although this court did not use the words "bad faith" at that time, the court's ruling implicitly found bad faith.  This court now expressly determines that Erum engaged in bad faith conduct sanctionable under the court's inherent powers.

Having determined that Erum acted in bad faith and that sanctions are appropriate under the court's inherent powers, the court turns to the amount of the sanction.  Defendants ask that Erum be sanctioned more than $18,000 to offset the attorneys' fees they incurred in this matter.  Under the circumstances, this court determines that the appropriate sanction is $6,000, payable to Defendants to offset the attorneys' fees directly caused by Erum's bad faith.

This court has discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45; accord Lasar v. Ford Motor Co., 399 F.3d 1101, 1118 (9th Cir. 2005).  One of the approved types of sanctions includes the assessment of attorneys' fees.  See Chambers, 501 U.S. at 45.  There is no question that Defendants incurred substantial attorneys' fees in this matter.  Defendants' attorneys charged reasonable rates that are within the range of professional rates in this community.  However, as Magistrate Judge Kurren noted in recommending $13,231.97 as the sanction amount, some of the requested attorneys' fees was for work that

11

was excessive or duplicative.  This court additionally notes that not all of the requested attorneys' fees resulted from Erum's bad faith conduct.  A review of Defendants' billing records indicates that some of the work for which Defendants seek reimbursement pertained to the original Complaint.  This court did not find Erum to have acted in bad faith in filing his original Complaint. Nor did this court find Erum's state law claims to have been filed in bad faith.  Some of the fees in issue are therefore unrelated to Erum's bad faith conduct.  The court declines to award such fees.

The court has reviewed Defendants' billing records and has determined that Defendants have incurred at least $6,000 in attorneys' fees directly related to Erum's bad faith conduct.[1]

---

[1]A brief summary of attorneys' fees incurred in excess of $6,000 that were directly related to Erum's bad faith conduct includes:

| Date | Attorney | Hours | Total Charged |
|------|----------|-------|---------------|
| 3/7/08 | ELL | .2 | 33.00 |
| 3/07/08 | KK | .5 | 165.00 |
| 3/13/08 | ELL | 3.7 | 610.50 |
| 3/13/08 | GG | .8 | 264.00 |
| 3/13/08 | LMN | 3.6 | 522.00 |
| 3/14/08 | ELL | 1.3 | 214.50 |
| 3/14/08 | GG | 1.5 | 495.00 |
| 3/14/08 | LMN | 2.6 | 377.00 |
| 3/15/08 | GG | 1.0 | 330.00 |

That is, in evaluating and responding to the frivolous federal question arguments and Erum's motion for temporary restraining order based on those arguments, the court finds that Defendants reasonably incurred at least $6,000 in attorneys' fees.  Given Erum's status as an individual who filed this action with the apparently sincere hope of benefitting the public, rather than for personal gain, and given the need for Defendants to have expended some of the fees had the case been filed in state court, the court determines that a $6,000 sanction is an appropriate sanction for Erum's bad faith conduct.

The court understands Defendants' attempt to completely shift the burden of paying attorneys' fees from them to Erum only.  However, the court decides that offsetting some of the attorneys' fees flowing from Erum's bad faith conduct reflects punishment proportional to that conduct.

In other words, in determining that a $6,000 sanction is appropriate, the court is examining the severity of Erum's bad

---

| 3/17/08 | ELL | 4.0 | 660.00 |
| 3/17/08 | GG | 1.0 | 330.00 |
| 3/18/08 | ELL | 9.3 | 1,534.50 |
| 3/19/08 | ELL | 8.4 | 1,386.00 |
| 3/19/08 | GG | .9 | 297.00 |
| 3/20/08 | GG | 3.1 | 1,023.00 |

faith conduct and assessing Defendants' response.  For example, it was not necessary for Defendants to have four attorneys working on a matter of this size, even if expedited work was required.

The court here adopts in part the May 14, 2008, findings and recommendation sanctioning Erum and modifies it only as to the sanction amount.  As discussed below, this court, on de novo review, rejects all of the arguments raised by Erum in his objections.

A.    Erum Had an Opportunity to Be Heard on the Motion for Sanctions.

Erum objects to Magistrate Judge Kurren's May 14, 2008, order.  He initially argues that the order is improper because he did not receive a hearing at which he could orally oppose the motion for sanctions.  However, there is no such requirement.

There is no dispute that, to comport with due process requirements, a person must be afforded notice and an opportunity to be heard before this court imposes sanctions on the person.  See Lasar v. Ford Motor Co., 399 F.3d 1101, 1109-10 (9th Cir. 2005).  Although Erum cites to Ninth Circuit case law indicating that a "hearing" is a necessary due process prerequisite to sanctions, the Ninth Circuit has expressly held that courts need not conduct an oral or evidentiary "hearing" to satisfy due process requirements before imposing sanctions.  "The opportunity to brief the issue fully satisfies due process requirements."

14

Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000); accord Lasar, 399 F.3d at 1112.  In other words, the "hearing" requirement is satisfied by allowing a party to fully brief the issue.  Here, Erum submitted written opposition to the motion for sanctions, as well as objections to Magistrate Judge Kurren's order regarding the sanctions.  As part of his opposition, Erum submitted his own declaration.  See Declaration (Apr. 30, 2008).  These documents provided Erum with an opportunity to be heard that satisfied due process requirements.  The court here notes that, according to Local Rule 7.2(d), a judge has the discretion to decide any matter without holding a hearing.

Erum's declaration attempts to establish that he did not file the Amended Complaint in bad faith.  His declaration is simply self-serving and does not negate bad faith.  The conduct before this court was sufficient for this court to determine that Erum had intentionally filed claims designed solely to manufacture federal question jurisdiction.  This court had the opportunity to listen to Erum during the hearing on the motion for temporary restraining order.  After the hearing, and considering the history of Erum's inability to stop the removal of the trees at issue in state court proceedings and his earlier-dismissed Complaint that did not properly allege diversity jurisdiction, this court was convinced that he had improperly

15

amended his Complaint in bad faith to add federal question claims. Erum stated at the hearing that he would be willing to drop a non-diverse party to proceed under the court's diversity jurisdiction. <u>See</u> Transcript of Proceedings (Mar. 20, 2008) at 16. He also indicated a willingness to attempt to add equal protection claims in which he was not going to allege that he was treated differently based on invidious discrimination. <u>Id.</u> at 15-16. The more Erum attempted to play with his claims, the more he convinced this court that he was trying to manufacture federal question jurisdiction, having lost in state court.

### B. Erum Received Proper Notice of the Possible Sanctions.

Erum claims that he was not provided adequate notice that sanctions might be imposed. This argument is meritless. On April 3, 2008, Defendants filed a motion for an award of attorneys' fees as a sanction for Erum's bad faith conduct. This motion sought more than $18,000 for attorneys' fees incurred by Defendants in connection with Erum's "immaterial, insubstantial, and frivolous 'federal' claims in an attempt to manufacture federal question jurisdiction." <u>See</u> Memorandum in Support of Motion at 1. The motion sought to impose sanctions under the court's inherent powers for Erum's bad faith attempt to assert meritless federal question claims. <u>Id.</u> at 9. On April 11, 2008, the court informed Erum that Defendants' motion for fees would "be construed by the court as a Motion for Sanctions." Minute

Order (Apr. 11, 2008).  Clearly, Erum was on notice that the court might sanction him for that bad faith conduct.

Erum argues that he did not know that he might be determined to have acted in bad faith because his conduct "was reckless at best, and was 'coupled with an improper purpose' . . . , namely, delaying the implementation of the Court's order of September 27, 2007."  Again, Erum was on notice that Defendants sought to have this court determine that his attempts to manufacture federal question jurisdiction were in bad faith.  Defendants specifically asked this court to determine that Erum's conduct was willful or at least reckless combined with "the improper purpose of obtaining federal jurisdiction and harassing Defendants."  Memorandum in Support of Motion at 10.  When Defendants asserted that Erum was harassing them, they were, in essence, complaining that they had already received court approval to take actions with respect to various monkeypod trees in a related case presided over by Chief Judge Helen Gillmor.  See Order, Civil Number 06-00570 HG/BMK (Sept. 27, 2007).  Erum's argument that he was not on notice of the specific conduct underlying the sanctions is simply not persuasive.

C.   The Ninth Circuit Does Not Require a Bad Faith
     Finding Supporting Sanctions Under the Court's
     Inherent Power to Be By Clear and Convincing
     Evidence.

Erum contends that, to support a sanction order
pursuant to the court's inherent power, the court's finding of
bad faith must be made by clear and convincing evidence.  No
Ninth Circuit case has required the finding of bad faith to be by
clear and convincing evidence.  Moreover, no Ninth Circuit case
has actually applied a clear and convincing standard when
imposing sanctions for bad faith conduct under the court's
inherent powers.  To the contrary, the Ninth Circuit only
requires the court to make a "specific finding of bad faith"
before issuing sanctions pursuant to its inherent power.  See,
e.g., United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir.
1986); accord Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir.
1993).

In Primus Automotive Financial Services, Inc. v,
Batarse, 115 F.3d 644 (9th Cir. 1997), the Ninth Circuit remanded
a case for an examination of whether a person's conduct was in
bad faith.  The Ninth Circuit told the district court to develop
more detailed findings about the person's bad faith, noting that
sanctions should only be imposed in the "rare and exceptional
case where the action is clearly frivolous, legally unreasonable
or without legal foundation, or brought for an improper purpose."
Primus, 115 F.3d at 649.  In remanding the case, however, the

18

Ninth Circuit did not tell the district court that it had to make its bad faith finding based on clear and convincing evidence. See id. It instead noted that the district court has "broad fact-finding powers with respect to sanctions." Id. (quotations omitted). It even noted that a person's bad faith may be inferred on appeal when that bad faith is "so patent." These statements indicate that a finding of bad faith by clear and convincing evidence is unnecessary to sanction Erum pursuant to the court's inherent powers.

Erum's reliance on In re Zilog, Inc., 450 F.3d 996, 1007 (9th Cir. 2006), is misplaced. That case did not involve a sanction issued pursuant to the court's inherent power, but instead involved the exercise of the court's civil contempt power through section 105(a) of the Bankruptcy Code. Zilog cited In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002), for its discussion of civil contempt. In that case, the Ninth Circuit stated:

> The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.

Id. The cases relied upon by Erum do not stand for the proposition that a clear and convincing standard is applied in the Ninth Circuit to a court's determination that a person acted

19

in bad faith for purposes of imposing sanctions under the court's inherent power.

Even if clear and convincing evidence were required, that standard is satisfied here.

D.   This Action Was Filed for an Improper Purpose.

Erum next denies that he filed the Amended Complaint in bad faith.  As discussed above, however, the court agrees with Magistrate Judge Kurren that Erum filed his Amended Complaint in bad faith.  Erum acted knowingly and willfully in filing his frivolous arguments to manufacture federal question jurisdiction.  As a retired attorney, Erum certainly knew that filing frivolous arguments was improper.  Even if Erum's conduct was only reckless, he acted in bad faith because his conduct was coupled with an improper purpose or frivolousness.  See Fink, 239 F.3d at 994.  Erum was improperly attempting to create federal question jurisdiction and was also attempting to delay implementation of Chief Judge Gillmor's September 2007 order allowing the trees in issue to be cut down under certain circumstances.

E.   The Sanctions are Appropriate.

Erum finally objects to the amount of fees recommended by Magistrate Judge Kurren in the sanction order.  He complains that the fees assessed are excessive, unreasonable, and not directly related to his bad faith conduct.  Because this court

has modified the sanction amount, awarding only $6,000, it need not address Erum's specific challenges as to the sanction amount.

V.      CONCLUSION.

        For the foregoing reasons, the court expressly finds that Erum filed his Amended Complaint in bad faith and sanctions him $6,000 to offset some of the attorneys' fees Defendants incurred as a direct result of his bad faith conduct.  Erum shall pay this sanction to Defendants forthwith.


        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 30, 2008.




                           /s/ Susan Oki Mollway
                        Susan Oki Mollway
                        United States District Judge


Erum v. County of Kauai, et al.; Civil No. 08-00113 SOM/BMK; ORDER SANCTIONING PLAINTIFF TED ERUM, JR., $6,000 FOR HIS BAD FAITH FILING OF THE AMENDED COMPLAINT